[Cite as *State v. Lang*, 2023-Ohio-2026.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220360 |
| | | TRIAL NO. B-2104504 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| KRIS LANG, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 21, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Gregory A. Cohen*, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1} Plaintiff-appellant state of Ohio appeals the decision of the Hamilton County Court of Common Pleas granting a motion to suppress filed by defendant-appellee Kris Lang on the basis that the search warrant was not supported by probable cause and that the good-faith exception to the exclusionary rule did not apply. We find merit in the state's assignment of error. Therefore, we reverse the trial court's judgment and remand the cause for further proceedings.

{¶2} The record shows that in March 2021, Detective Keith Ingram of the St. Bernard Police Department and Detective Kenneth Devers of the Norwood Drug Task Force received information from a confidential informant that an individual known as "Dread" was distributing cocaine in the St. Bernard and Avondale neighborhoods. The informant described Dread as a black male in his late 50s who had a beard and long dreadlocks. The informant also provided a phone number for Dread and the address where he was selling drugs, 3672 Vine Street.

{¶3} Using the information from the informant, the detectives identified Lang as Dread. They showed a picture of Lang to the informant, who confirmed that Lang was the person he knew to be Dread. Further investigation revealed that Lang was not living at the address listed in the Bureau of Motor Vehicles ("BMV") records. The detectives determined that his residence was 4016 St. Martins Place. Through numerous hours of surveillance, they discovered that Lang usually drove a brown 2017 Nissan Altima, which was owned by Charlene Maddox, who they believed was Lang's girlfriend. The BMV listed her address as 4016 St. Martins Place.

{¶4} In July 2021, the detectives started conducting surveillance on both 3672 Vine Street and 4016 St. Martins Place. At the Vine Street address, Detective Ingram observed what he believed based on his training, knowledge, and experience

2

to be a drug transaction, which involved Lang and another individual known to Detective Ingram. The detectives captured multiple still photographs of what they believed to be drug transactions. They obtained a warrant to install a GPS device on the Nissan that Lang had been observed driving. That device was installed on July 21, 2021.

{¶5} Based on the information they had gathered, the detectives decided to conduct controlled purchases of cocaine. The first occurred on July 29, 2021. The detectives met the informant at a neutral location. The informant then placed a recorded call to Lang and ordered one-half ounce of cocaine, and Lang instructed him to go to 3672 Vine Street. The detectives provided the informant with $560 and a covert recording device, which allowed the detectives to monitor the transaction. At approximately 5:38 p.m., Lang gave the informant cocaine, and the informant paid him $560.

{¶6} A second controlled buy occurred on August 25, 2021. At about 4:46 p.m., the informant met Lang at 3672 Vine Street, and both went inside the residence. Lang led the informant to the kitchen where he pulled out a bag containing what appeared to be cocaine. Lang weighed the substance and packaged it to complete the transaction.

{¶7} Based on their surveillance and data obtained from the GPS unit, the detectives established a distinct pattern of movement between the St. Martins Place residence and the Vine Street address. Lang would leave St. Martins Place daily between 1:30 and 3:00 p.m. and travel to 3672 Vine Street, where he would sell drugs. Afterward, he would return to the St. Martins Place address, where he would spend the night. Based on this pattern and his experience in drug investigations, Detective Ingram believe that Lang was storing drugs and cash at the St. Martins Place address.

{¶8} On August 27, 2021, Detective Ingram sought search warrants for both the Vine Street and St. Martins Place addresses. A municipal court judge approved the warrants, and the searches occurred at both addresses a few days later. A search of the St. Martins Place address yielded a firearm and substantial quantities of cocaine and marijuana.

{¶9} Lang filed a motion to suppress the evidence recovered from the St. Martins Place address in which he argued that the affidavit supporting the search warrant failed to establish probable cause that any illegal activity had occurred at that address. He did not challenge the search of the Vine Street address. The trial court granted the motion. It found that "no probable cause existed to justify the search of 4016 St. Martins Place." It also found that probable cause "was so lacking" in the affidavit "that the officer was not entitled to rely on the good faith exception to the exclusionary rule." This appeal followed.

{¶10} In its sole assignment of error, the state contends that the trial court erred in granting Lang's motion to suppress. It argues that the affidavit supporting the search warrant for 4016 St. Martins Place established probable cause to search that residence, and the trial court failed to give due deference to the issuing magistrate's determination that probable cause existed. It also argues that even if affidavit did not show probable cause, the good-faith exception to the exclusionary rule applies. This assignment of error is well taken.

{¶11} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152,

2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Richardson*, 1st Dist. Hamilton No. C-200187, 2021-Ohio-2751, ¶ 13.

{**¶12**} To establish probable cause to issue a search warrant, the supporting affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched. *State v. Martin*, 2021-Ohio-2599, 175 N.E.3d 1004, ¶ 11 (1st Dist.). Probable cause exists when a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of a crime. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus; *Martin* at ¶ 11. "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " (Emphasis deleted.) *George* at 329, quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Consequently, probable cause "is not a high bar." *State v. Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, ¶ 35, quoting *Dist. of Columbia v. Wesby*, 138 U.S. 577, 586, 138 S.Ct. 577, 199 L.Ed.2d 637 (2018).

{**¶13**} A reviewing court, which includes a trial court ruling on a motion to suppress, as well as an appellate court, must give great deference to the magistrate's probable-cause determination. *George* at 329-330; *State v. Hampton*, 1st Dist. Hamilton No. C-080187, 2008-Ohio-6088, ¶ 16. "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review." *George* at 329, quoting *Gates* at 236. Our duty is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. *See George* at paragraph two of the syllabus; *State v. German*, 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, ¶ 12. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *George* at paragraph two of the syllabus.

**{¶14}** Where oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency of the affidavit by evaluating the facts contained in the four corners of the affidavit and applies an objective-reasonableness standard. A reviewing court is concerned exclusively with the statements contained within the affidavit itself. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39.

**{¶15}** The affidavit supporting the warrant first described the house located at 4016 St. Martins Place. Then, it stated that the affiant had good cause to believe that cocaine, cash and other accouterments of drug use and trafficking were concealed in the house. Next, Detective Ingram discussed his qualifications and career history. That section was followed by a section entitled, "Known Facts About Drug Traffickers," which was based upon Detective Ingram's "training, experience, and participation in other narcotics investigations." Those facts included that "[d]rug dealers often use their home, or the home of individuals close to them to store narcotics and protect their assets."

**{¶16}** The affidavit detailed the detectives' investigation. It discussed how they discovered, after numerous hours of surveillance, that Lang's residence was at the St. Martins Place address, and that Lang drove a 2017 brown Nissan Altima, which was owned by Maddox. The affidavit further stated that because the information provided by the informant "was verified by investigators," the detectives decided to use the informant to "conduct controlled purchases," and described how those buys were conducted.

**{¶17}** Next, the affidavit stated,

Detectives have maintained electronic and physical surveillance on LANG since July 21, 2021. LANG has established a pattern which

6

indicates his primary residence as 4016 St. Martins Place Cheviot, OH 45211. LANG spends the overnight hours at the aforementioned address and generally leaves the address between 1:30 p.m. and 3:00 p.m. and proceeds to 3672 Vine St. Detectives believe LANG disassociates himself from the St. Martins address to conceal his narcotics trafficking from law enforcement and rival drug dealers. Based on your Affiants [sic] training, knowledge, and experience[,] it is common for individuals who distribute illegal narcotics to utilize vehicles and residences of others to further their illegal activities.

Based on the foregoing facts investigators believe LANG is using 4016 St. Martins Place in Cincinnati, OH 45211 to store narcotics and the proceeds of narcotics trafficking.

**{¶18}** In granting the motion to suppress, the trial court found that the affidavit "lacked probable cause that any criminal activity occurred at 4016 St. Martins Place." The court noted that the only evidence in the affidavit as to Lang's actions involving 4016 St. Martins Place was that the surveillance of Lang at that address "revealed that on dates – not identified as the dates of the narcotics buys at 3672 Vine Street – Mr. Lang stayed overnight at 4016 St. Martins Place and left between 1:30 and 3:30 p.m. to go to 3672 Vine Street." The court further stated that no facts were provided in the affidavit to indicate that evidence was likely to be found at the St. Martins Place address, and that the detective's beliefs and experiences were insufficient to demonstrate that evidence was likely to be found there. In that analysis, the trial court failed to give deference to the issuing magistrate's probable-cause determination.

**{¶19}** The affidavit supporting the search warrant must set forth adequate facts to establish a nexus between the place to be searched and the evidence sought, which depends on the facts and circumstances of each individual case. *Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, at ¶ 58, citing *State v. England*, 1st Dist. Hamilton No. C-040253, 2005-Ohio-375, ¶ 9-10. Nevertheless, the necessary nexus need not be established by direct evidence. *Hobbs* at ¶ 58, citing *England* at ¶ 9.

**{¶20}** In *State v. Young*, 10th Dist. Franklin No. 18AP-845, 2019-Ohio-4639, a case with similar facts, the appellate court upheld the search warrant for a drug trafficker's residence, even though there was no direct evidence of drug activity at that location. In that case, the warrant stated that police officers had repeatedly observed the defendant drive from his residence on Caldwell Place to locations where the police had observed the defendant engaging in drug activity. The officers then observed the defendant return to his Caldwell Place residence. The defendant filed a motion to suppress evidence found at the Caldwell Place address, in which he argued that the affidavit in support of the warrant did not demonstrate a nexus between the observed drug activity and the location ultimately searched. The trial court denied the motion.

**{¶21}** In affirming the trial court's decision, the appellate court found that the pattern of movement between the Caldwell Place address and the locations of the drug transactions was sufficient to support a finding of probable cause to search the Caldwell Place residence. It stated that "a nexus exists between a known drug dealer's residence when some reliable evidence exists connecting to the criminal activity with the residence." *Young* at ¶ 18, quoting *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 14.

**{¶22}** It added,

Young argues the information provided by the confidential informant did not provide probable cause that Young was storing drugs at 1008 Caldwell Place. This court recently considered the question of whether a sufficient nexus exists between a suspected drug dealer's criminal activity and the suspected drug dealer's residence. In [that recent case], we held that "[t]he temporal proximity between appellant's arrivals to the residence and the controlled drug transactions, combined with [a detective's] experience in narcotics investigations, provided the magistrate with a substantial basis to conclude that a nexus existed between the place to be searched and the alleged criminal activity, and, at the least, probable cause to believe the proceeds of a drug transaction would be located in the residence."

*Young* at ¶ 19, citing *Phillips* at ¶ 26.

{¶23} In this case, reliable evidence connected Lang's drug activity to the St. Martins Place address. The detectives conducted numerous hours of surveillance of the two addresses and established a daily pattern of movement between the St. Martins Place address and the Vine Street address. Every day, Lang traveled from the St. Martin's Place to the Vine Street address at roughly the same time, engaged in confirmed drug transactions, and returned nightly to St. Martins Place. That pattern caused Detective Ingram, who had numerous years of experience, to believe that evidence of drug trafficking would likely be found at the St. Martins Place residence.

{¶24} The magistrate issuing the warrant had a substantial basis to find that probable cause existed to search the residence at 4016 St. Martins Place. In granting the motion to suppress, the trial court engaged in a de novo review, substituted its judgment for that of the issuing magistrate and failed to give deference to the

magistrate's finding of probable cause. Therefore, the trial court erred in granting the motion to suppress.

**{¶25}** The state also argues that the trial court erred in finding that the good-faith exception to the exclusionary rule did not apply. See *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Hampton*, 1st Dist. Hamilton No. C-080187, 2008-Ohio-6088, at ¶ 18. Because we have already determined that the search of 4016 St. Martins Place was supported by probable cause, we need not address this issue.

**{¶26}** In sum, we sustain the state's assignment of error. We reverse the trial court's decision granting Lang's motion to suppress and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**BERGERON**, **P.J.**, and **KINSLEY**, **J.**, concur.

Please note:

The court has recorded its own entry this date.